### Roxalana Farnum *vs.* Franklin M. Farnum & another.

A release by A. of all demands against B., reciting a settlement " between A. on the one side and B. and C. on the other," has no legitimate tendency to prove that there was a joint interest or partnership between B. and C. in the same business during that time.

In an action by a mother against two sons for money paid to their use, one of the defendants contended that the money was paid to the sole use of the other; and testified that he asked his mother to give him a note for the amount which he feared he should have to pay for his brother, and she offered to give him a mortgage of part of her farm. *Held*, that evidence of her having in former years paid money for him, and given him the use of the farm, was incompetent to contradict his testimony.

Evidence that the maker of a note put property into the hands of the first indorser has no tendency to show that the latter signed the note for the accommodation of the maker alone, and not of the maker and the second indorser jointly.

An exception to the admission of incompetent evidence is not cured by an instruction to the jury that it is immaterial.

Evidence that two persons were jointly interested in the buying and selling of horses is irrelevant to the issue of their interest in buying and selling cattle; and a statement relating to it, made on cross-examination, cannot be contradicted.

ACTION OF CONTRACT for money paid to the defendants' use Otis Farnum, one of the defendants, was defaulted.

At the trial in the court of common pleas, at December term 1858, before *Mellen*, C. J., it appeared that in 1851 and 1852 Franklin and Otis Farnum had been engaged jointly, and also each on his own account, in the business of buying and selling cattle, raising money upon their own notes without indorsement; and that in 1853 and 1854 they were both engaged in the same business with E. T. Archbald & Company in the State of New York, and the plaintiff, who was the mother of the defendants, was accustomed to indorse their notes, for their joint benefit and accommodation in carrying on that business.

It appeared that the money sought to be recovered in this action was paid by the plaintiff upon two notes, dated March 9th 1855, signed by Otis and payable to Franklin, indorsed by the plaintiff and then by Franklin, with the expectation of all the parties that the money to be raised thereon would be applied to the purchase of cattle in New York ; and that the notes were afterwards protested for nonpayment. Franklin's defence was, that he had no interest in the notes or the money raised thereon, but indorsed the notes at the request and for the sole benefit of Otis ; and he proved that Otis sold the cattle which were purchased with the money raised upon the two notes, and took notes for the price, payable to himself alone.

The plaintiff, " for the purpose of showing that the defendants were and did constitute but one party in the joint trade or business of buying and selling cattle, and for the purpose of raising the presumption that there was between the defendants a joint interest or partnership in this business down to the time when the 9th of March notes were made," offered in evidence a release of all demands from " E. T. Archbald & Company " to Otis Farnum, dated April 13th 1856, to which this recital was prefixed :

" Whereas on or about the month of August A. D. 1853 E. T. Archbald and Abel P. Morse, copartners doing business under the name and firm of E. T. Archbald & Co. in Hammond, St Lawrence county and State of New York, and Franklin M Farnum and Otis Farnum, both of Charlton, in the county of

43 *

Worcester and State of Massachusetts, entered into a verbal agreement to become joint dealers in the trade or business of buying and selling cattle, to divide the profits arising therefrom into equal shares and proportions; and since the commencement of said business each of the above named parties has been entrusted by the others with money and joint funds arising from, and necessary for the carrying on of said business; and an account has this day been taken by and between E. T. Archbald & Co. on the one side and Franklin M. and Otis Farnum on the other, and settlement made."

It was admitted that two other similar papers were passed between the parties at the same time; one from Franklin and Otis Farnum to Archbald & Company, and the other from Archbald & Company to Franklin. The presiding judge excluded the paper.

Franklin M. Farnum offered evidence " that in the years 1847, 1848, 1851 and 1855, Otis Farnum had put property of his into the hands and possession of his mother — as tending to show that she signed the 9th of March notes for the sole benefit of Otis, without offering to show that any part of it was applied to the payment of the 9th of March notes." The judge, against the objection of the plaintiff, admitted the evidence; but instructed the jury, that unless the plaintiff applied the proceeds of the property to the payment of the notes the evidence would be immaterial.

It appeared that Otis had lived for the last fifteen years on the farm of his mother in Charlton, paying her nothing for its use except by supporting her, which cost him much less than the value of such use. Franklin testified " that he asked his mother to give him a note for the amount he was afraid he should have to pay for Otis, and she offered to give him a deed of a part of her farm, or a mortgage of it." The plaintiff, " for the purpose of showing the improbability of this testimony, offered to produce memoranda of money which she had paid to Franklin and to his use previously to 1837; " and also offered to show that " she had given to Franklin the use of the farm on which she now lives, for nine years, from 1838 to 1847, on

the same terms as those on which Otis now lives on it, and that she furnished the stock and tools which were necessary for carrying on the farm, for which she had received nothing from him." But the judge excluded this evidence.

Otis Farnum, who was called as a witness for the plaintiff, was asked, upon cross-examination, several questions about a purchase and sale of a drove of horses in the spring of 1854 ; (which was a matter which the plaintiff's counsel had not alluded to, nor offered any evidence of;) and replied that his brother Franklin was jointly and equally interested with him in that transaction. At a subsequent stage of the trial, the defendant was allowed, against the objection of the plaintiff, to introduce evidence to contradict this testimony, " on the ground that, the plaintiff having introduced evidence of the joint transactions between them prior to 1855 to raise a presumption that said joint transactions continued in 1855, it was competent for the defendant to show an interruption of the same."

The jury returned a verdict for the defendant, and the plaintiff alleged exceptions.

*P. E. Aldrich & S. P. Twiss,* for the plaintiff.

*F. H. Dewey & H. Williams,* for Franklin M. Farnum.

METCALF, J. The paper signed by Archbald & Company, dated April 14th 1856, and offered in evidence by the plaintiff, was rightly excluded. It was offered " for the purpose of showing that the defendants," F. M. Farnum and O. Farnum, " were and did constitute but one party in the joint trade or business of buying and selling cattle, and for the purpose of raising a presumption that there was between the defendants a joint interest or partnership in the cattle trade or business down to the time when the 9th of March notes were made." We are of opinion that the paper had no legitimate tendency to show such fact, or to raise such presumption. *Frustra probatur quod probatum non relevat.*

The court also rightly refused to receive in evidence the plaintiff's memoranda of money paid by her to F. M. Farnum before the year 1837, and of her having given him the use of her farm for nine years, ending in 1847, on the same terms as those on

which O. Farnum was living on it at the time of the trial. The facts, thus offered to be proved, were far too remote from the inference proposed to be drawn from them, and would not have warranted that inference, namely, the improbability of F. M Farnum's testimony that he asked the plaintiff to give him a note for the amount which he feared he should have to pay for O. Farnum, &c. There is no natural connection, nor any natural repugnancy, between those facts and the statements made by F. M. Farnum in his testimony. See Best on Ev. §§ 90, 246.

But we are of opinion that evidence of O. Farnum's having put property into the hands and possession of the plaintiff, in the years 1847, 1848, 1851 and 1855, was wrongly admitted for the purpose of showing that she signed the notes of March 9th 1855 for his sole benefit. That evidence, taken by itself, had no more tendency to show that she signed those notes for his sole benefit, than that she signed them for the joint benefit of him and F. M. Farnum. And the remark of the court to the jury, that this evidence would be immaterial unless the plaintiff applied the proceeds of that property to the payment of those notes, (of which there does not appear to have been any proof,) was not sufficient, we fear, to prevent a wrong effect on the jurors' minds from the introduction of that evidence. See *Ellis* v. *Short*, 21 Pick. 142, and *Norris* v. *Badger*, 6 Cow. 455.

We are also of opinion that evidence was wrongly admitted to contradict a statement of O. Farnum, made on cross-examination. That statement related to a matter collateral and irrelevant to the issue on trial, and was evidently drawn from him for the mere purpose of contradicting him. This is not allowable. 1 Greenl. Ev. § 449, and cases there collected. *Rex* v *Rudge*, Peake's Add. Cas. 232.         *Exceptions sustained.*